UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFFREY A. OLSHELFSKE,                          Case No. 18-12095

                Plaintiff,                 George Caram Steeh
v.                                             United States District Judge

COMMISSIONER OF SOCIAL                         Stephanie Dawkins Davis
SECURITY,                                      United States Magistrate Judge

             Defendant.
_____/

## REPORT AND RECOMMENDATION
## CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkts. 12, 16)

## I.    PROCEDURAL HISTORY

### A.    Proceedings in this Court

On July 3, 2018, plaintiff Jeffrey A. Olshelfske filed the instant suit.  (Dkt.

1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge

George Caram Steeh referred this matter to the undersigned for the purpose of

reviewing the Commissioner's unfavorable decision denying plaintiff's claim for a

period of disability, disability insurance benefits, and supplemental security

income benefits.  (Dkt. 3).  This matter is before the Court on cross-motions for

summary judgment.  (Dkt. 12, 16).

B.   Administrative Proceedings

Olshelfske filed an application for a period of disability and disability insurance benefits on October 6, 2014, and filed an application for supplemental security income on June 5, 2017.  (Tr. 18).[1]  In both applications, Olshelfske alleged disability beginning on March 20, 2012.  (Tr. 15).  He amended the alleged onset date to January 4, 2014.  The claims were initially disapproved by the Commissioner on August 6, 2015.  Plaintiff requested a hearing and on June 27, 2017, plaintiff appeared with counsel before Administrative Law Judge ("ALJ") Carol Guyton, who considered the case *de novo*.  (Tr. 18-29).  In a decision dated August 10, 2017, the ALJ found that plaintiff was not disabled prior to February 13, 2017, but became disabled on that date.  (Tr. 29).  The ALJ's decision became the final decision of the Commissioner when the Appeals Council, on May 7, 2018, denied plaintiff's request for review.  (Tr. 1-5); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

---

[1] The Administrative Record appears on the docket at entry number 9.  All references to the same are identified as "Tr."

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Olshelfske, born February 14, 1967, was 46 years old on the amended alleged disability onset date.  (Dkt. 12, at p. 2).  He has past relevant work as a scale operator.  (*Id.*).  His claim is based on back and shoulder issues he has had since he was in a car accident on March 20, 2012.  (*Id.* at p. 3).  Specifically, he indicated that he was unable to work due to neck pain, numbness in both arms, lower back pain, lower extremity numbness, headaches, depression, anxiety, balance issues, and fatigue.  (Tr. 23-24).

The ALJ applied the five-step disability analysis and found at step one that Olshelfske had not engaged in substantial gainful activity since the alleged onset date.  (Tr. 21).  At step two, the ALJ found that Olshelfske's degenerative disc disease of the cervical and lumbar spine, bilateral carpal tunnel syndrome, depressive disorder, and anxiety were "severe" within the meaning of the second sequential step.  (*Id.*).  However, at step three, the ALJ found no evidence that plaintiff's impairments singly or in combination met or medically equaled one of the listings in the regulations.  (Tr. 21-23).

Thereafter, the ALJ assessed plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the
> undersigned finds that since March 20, 2012, the

> claimant has the residual functional capacity to perform
> sedentary work as defined in 20 CFR 404.1567(a) and
> 416.967(a) except the claimant can lift and carry up to
> ten pounds occasionally and less than ten pounds
> frequently, stand and walk for two hours in an eight-hour
> day and sit for six hours in an eight-hour day. The
> claimant can occasionally push, pull and use hand/foot
> controls with the lower extremities and upper extremities.
> The claimant can occasionally climb ramps and stairs,
> balance, crawl, kneel, stoop and crouch. The claimant
> can never climb ladders, ropes or scaffolding. The
> claimant can occasionally overhead reach and frequently
> handle and finger with the upper extremities bilaterally.
> The claimant should avoid all exposure to vibration. The
> claimant is limited to simple routine tasks involving no
> more than simple short instructions and simple work-
> related decisions with few workplace changes. He can
> have occasional contact with the coworkers, supervisors
> and the general public.

(Tr. 23). At step four, the ALJ found that plaintiff was unable to perform any past

relevant work since March 20, 2012.[2] (Tr. 27). At step five, the ALJ denied

plaintiff benefits in part because she found that there were jobs that exist in

significant numbers in the national economy that plaintiff could perform, but found

plaintiff disabled since February 13, 2017. (Tr. 29).

---

[2] The ALJ makes reference here to Olshelfske's original alleged onset date. However, as indicated above, he updated the alleged onset date to January 4, 2014.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court.  *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v.*

*McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486

F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts."  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.     Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits."

*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);

*accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program of Title II (42 U.S.C. §§ 401 *et seq*.) and the

Supplemental Security Income Program of Title XVI (42 U.S.C. §§ 1381 *et seq*.).

Title II benefits are available to qualifying wage earners who become disabled

prior to the expiration of their insured status; Title XVI benefits are available to

poverty stricken adults and children who become disabled.  F. Bloch, Federal

Disability Law and Practice § 1.1 (1984).  While the two programs have different

eligibility requirements, "DIB and SSI are available only for those who have a

'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  "Disability"

means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis set forth at 20 C.F.R. §§ 404.1520, 416.920. Essentially, the ALJ must determine whether: (1) the plaintiff is engaged in significant gainful activity; (2) the plaintiff has any severe impairment(s); (3) plaintiff's impairments alone or in combination meet or equal a Listing; (4) the claimant is able to perform past relevant work; and (5) if unable to perform past relevant work, whether there is work in the national economy that the plaintiff can perform. (*Id.*). "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding rejecting the existence of disability, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C. <u>Analysis and Conclusions</u>

1. RFC

a. Parties' Arguments

Olshelfske contends that the RFC is not supported by substantial evidence because the record did not contain any opinion evidence to support the physical RFC. The ALJ rejected the medical opinions from Olshelfske's treatment providers and there is no State agency reviewing opinion on his physical impairments. (Dkt. 12, at p. 12). Olshelfske acknowledges that the RFC assessment is the sole responsibility of the ALJ. But, he argues that courts in this District tend to require an ALJ to obtain an expert medical opinion when formulating the RFC unless the evidence shows relatively little physical impairment such that the ALJ can "render a commonsense judgment about functional capacity." (*Id.* at p. 13) (citing *Gross v. Comm'r of Soc. Sec.*, 247 F. Supp. 3d 824 (E.D. Mich 2017)). According to Olshelfske, the ALJ's RFC assessment is based on the ALJ's own medical interpretation of the record. He

says there is no medical opinion to support the finding that he could perform sedentary work involving standing and/or walking for two hours out of the day, frequent handling and fingering with the bilateral upper extremities, and no accommodations for additional work breaks, leg elevation due to swelling, or lying down, as determined by the ALJ.  (*Id.* at p. 14-15).  The evidence that could be interpreted as opinion evidence does not suffice because those opinions are either temporary or do not speak to residual functional capacity.  (*Id.* at p. 15).

Olshelfske states that this Court may not uphold the ALJ's decision, even if supported by substantial evidence, if the decision does not provide a logical bridge between the evidence and the result.  (*Id.* at p. 16).  For example, Olshelfske points to the ALJ's determination that he could stand and walk for two hours in an eight-hour workday.  However, the evidence "consistently documents [his] 'profound' standing and ambulatory intolerance and significant weakness in the lower extremities."  (*Id.* at p. 17).  And though the ALJ said Olshelfske did not need to use a walker to ambulate because he left his walker in his car at a doctor's appointment, Olshelfske says there is additional evidence documenting ambulatory issues and that he was using a walker continuously after that appointment.  (*Id.*) (citing Tr. 684).  Olshelfske also contends that the ALJ's determination that he did not need to lie down throughout the day or need to elevate his legs is not supported by the evidence.  Specifically, the ALJ ignored his diagnosis of chronic venous

insufficiently and documentation of bilateral foot edema that disappeared with foot elevation.  (*Id.* at p. 18).

In response, the Commissioner begins by noting that neither the Regulations nor the Sixth Circuit require the ALJ to rely on a medical opinion to support the RFC determination.  (Dkt. 16, at p. 6-9).  The Commissioner distinguishes this case from *Gross*, 247 F. Supp. 3d 824.  First, unlike in *Gross*, this case contains the opinions of Drs. Prasad, Zamorano, and Chaldecott, as well as a professional in the office of Dr. Hakki.  Thus, the ALJ had a "starting point" for the RFC determination.  Second, according to the Commissioner, the ALJ did not rely on her own medical expertise to formulate the RFC.  (*Id.* at p. 10).

Finally, the Commissioner argues that the ALJ did create a logical bridge between the evidence and the RFC.  The Commissioner points to three guiding principles here: (1) on substantial evidence review, the "court may look to any evidence in the record, regardless of whether it has been cited by the [ALJ]," *Heston*, 245 F.3d at 535; (2) the ALJ is not required to mention particular pieces of evidence to demonstrate that they were considered, *Loral Defense Sys.-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999); and (3) the claimant always bears the burden to demonstrate RFC limitations, *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391-92 (6th Cir. 1999).  (*Id.* at p. 13).  In particular, the ALJ fully supported the determination that Olshelfske does not need to use a walker to ambulate, does not

need to lie down throughout the day, and does not need to elevate his legs.  (*Id.* at p. 14-17).

   b. Evaluation of the Evidence

  In arriving at plaintiff's RFC, the Commissioner must base the decision on "all of the relevant medical and other evidence."  20 C.F.R. 416.945.  The statute does not require that the Commissioner rely on a physician's RFC finding or any other particular piece of evidence.  Indeed, the Sixth Circuit has opined, in several unpublished decisions that, "[t]o require the ALJ to base her RFC finding on a physician's opinion, would, in effect confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled."  *Rudd v. Comm'r of Soc. Sec.*, 531 Fed. Appx. 719, 728 (6th Cir. 2013); *see also Stokes v. Comm'r of Soc. Sec,* 769 Fed. App'x 298 (6th Cir. 2019); *Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 Fed. App'x 395, 401 (6th Cir. 2018); *Shepard v. Comm'r of Soc. Sec.*, 705 Fed. App'x 435, 442-43 (6th Cir. 2017); *Brown v. Comm'r of Soc. Sec.*, 602 Fed. App'x 328, 331 (6th Cir. 2015); *Coldiron v. Comm'r of Soc. Sec.*, 391 Fed. App'x 435, 439 (6th Cir. 2010).[3]

---

[3] The undersigned acknowledges a separate line of cases that suggests a medical opinion on a claimant's RFC may be appropriate when it appears that the ALJ has engaged in the prohibited act of "playing doctor" by interpreting raw medical data.  *See e.g. Gross v. Comm'r of*

It is true that courts have admonished ALJs, as non-physicians, to exercise caution in evaluating raw medical data to extrapolate what a claimant can and cannot do. *See Brown v. Comm'r of Soc. Sec.,* 602 Fed. Appx. 328, 331 (6th Cir. 2015) ("[A]n ALJ should resist the temptation to substitute the ALJ's own interpretation of medical records for that of a physician who has examined the records."); *Wyatt v. Comm'r of Soc. Sec.*, 2013 WL 4483074, at *16 (E.D. Mich. Aug. 19, 2013) ("An ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings." (internal quotation marks and citation omitted)). But, there is no "brightline rule that medical opinions must be the building blocks of the RFC." *Charbonneau v. Comm'r of Soc. Sec.*, 2019 WL 960192, at *17 (E.D. Mich. Jan. 11, 2019), *report and recommendation adopted*, 2019 WL 952736 (E.D. Mich. Feb. 27, 2019); *Williams v. Berryhill*, 2019 WL 1274821, at *3 (E.D. Mich. Mar. 20, 2019). Indeed, it has been recognized that "there are likely instances in which an ALJ can formulate an RFC without the aid of opinion evidence." *Gross v. Comm'r of Soc. Sec.*, 247 F. Supp. 3d 824, 830 (E.D. Mich. 2017). In light of

*Soc. Sec.*, 247 F. Supp. 3d 824, 830 (E.D. Mich. 2017); *Isaacs v. Astrue,* 2009 WL 3672060 at *10 (S.D. Ohio Nov. 4, 2009); *Deskin v. Comm'r of Soc. Sec.* 605 F.Supp.2d 908, 912 (N.D. Ohio 2008); and *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999). While plaintiff suggests that the ALJ here "played doctor," those cases involve circumstances where there was no medical opinion connecting the raw medical data to the ALJ's RFC in functional terms. The record here contains such medical opinions and the ALJ expressly relied in part on the opinions in formulating her RFC.

the Sixth Circuit's recent and repeated recognition of this fact, the ALJ's review of the medical record cannot be faulted.

### i.    Opinion Evidence

First, notwithstanding *Rudd's* and its progeny's rejection of an RFC medical opinion requirement and contrary to Olshelfske's assertion, the ALJ did rely, at least in part, on medical opinion evidence.  In January 2014, Dr. Zamorano issued a temporary disability opinion for a period spanning June 21, 2013 to March 21, 2014 (and thus relevant to the beginning months of the relevant period).  Dr. Zamorano opined that Olshelfske was capable of working with the following restrictions: no lifting greater than 10 pounds and may need to wear a cervical collar.  (Tr. 284).  The ALJ gave the opinion some weight.  (Tr. 26).  The ALJ also gave some weight to a "disability certificate" from Orthopedic P.C.  (Tr. 26).  This opinion indicated that Olshelfske could not lift more than 10 pounds, and that he could not bend or sit/stand for prolonged periods.  (Tr. 634).  The ALJ concluded that the lifting and standing restrictions were consistent with Olshelfske's capabilities, but the sitting restriction was undefined and thus was discredited.  In June 2016, Olshelfske's treating physician Dr. Chaldecott gave the following restrictions after the cervical spine surgery: no bending, lifting, or twisting.  (Tr. 664).  Olshelfske agrees that Dr. Chaldecott's opinion was about temporary post-surgery restrictions rather than an assessment of his long-term ability to engage in

work activities.  (Dkt. 12, at p. 16, n.4).  Since the restrictions were temporary, it suggests that Dr. Chaldecott did not think Olshelfske was incapable of engaging in bending, lifting, or twisting before his surgery or after he recovered from surgery, and thus provides  at least some insight into Olshelfske's long-term functioning.

The ALJ also discussed the July 2015 opinion of State agency examining physician Dr. Prasad.  Dr. Prasad noted weakness in the left leg with some sensory loss in the left foot.  He found Olshelfske's left leg strength to be 4/5.  (Tr. 361). He also noted tenderness and muscle spasms in the lumbosacral spine.  Dr. Prasad opined that Olshelfske could grossly grasp, pinch, and hold things with his upper extremities.  He also opined that Olshelfske's limp on the left side was because of sensory loss in the left foot and some weakness in the left leg.  (*Id.*).  The ALJ accounted for weakness in the lower extremities by limiting him to sedentary work and only occasional pushing, pulling, and using foot controls, and never climbing ladders, ropes, or scaffolds.  The ALJ also limited Olshelfske's upper extremity movement to occasional pushing and pulling and occasional overhead reaching. (Tr. 23).

In his reply brief, Olshelfske asserts that he raised a challenge to the ALJ's failure to expressly weigh Dr. Prasad's opinion.  He says he incorporated this argument into his larger argument that the ALJ's RFC lacked a basis in any opinion evidence of record.  (Dkt. 17, at p. 4).  Yet, in his opening brief, the whole

of his discussion states that "the failure to weigh [Dr. Prasad's] opinion leaves the reader with no insight into how it factored into [the ALJ's] decision." (Dkt. 12, at p. 15-16). Olshelfske did not, however, provide any developed argument on the issue. It is axiomatic that "issues adverted to in perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). It is not for the Court to craft an entire analysis on the ALJ's treatment of Dr. Prasad's opinion when the issue was not specifically argued by the plaintiff.

Thus, the ALJ was not without any opinion evidence on Olshelfske's functional limitations. Dr. Prasad's opinion and the opinions given some weight were at least "a buoy that kept the ALJ from being totally lost at sea" in formulating the RFC. *See Williams*, 2019 WL 1274821, at *4.

### ii.    Objective Medical Evidence

Beyond the opinion evidence, the ALJ's review of the objective medical evidence, including amongst other things, findings regarding strength, range of motion and level of treatment do not suggest error.[4] Rather, the ALJ reviewed the

---

[4] It is important to note at the outset that the period under review here is from the alleged onset date, January 4, 2014, through February 13, 2017, the date the ALJ determined Olshelfske became disabled. (Tr. 29).

large amount of objective medical findings that can be translated into functional limitations, even by a lay person. The vast majority of this evidence was not complicated diagnostic and/or highly-specialized medical data that requires professional training to interpret (e.g. MRIs, ultrasounds and other mechanized diagnostic testing). *See Gross*, 247 F. Supp. 3d at 829 (Holding that an RFC need not be entirely based on a medical opinion as long as it was "supported by substantial evidence and not merely the ALJ's own medical interpretation of the record.").

The ALJ discussed Olshelfske's cervical spine issues and improvement after surgery. For example, the record shows that after his surgery in April 2013 he was able to return to light work until January 2014. In November 2013, he reported that his neck pain had improved, and he denied upper extremity pain and paresthesia. (Tr. 289). At that time, he had 5/5 strength in the upper extremities, but some limitation in motion of the cervical spine. (*Id.*). On January 10, 2014, just after the alleged onset date, Olshelfske reported again that his neck pain had improved, but complained of radiating lower back pain. On physical examination, he had 5/5 strength in his upper extremities. (Tr. 285, 287). In February 2014, physical examination revealed normal musculoskeletal and neck range of motion. (Tr. 491). In 2015, Olshelfske reported ongoing pain in his neck and had decreased range of motion in the neck. (Tr. 463). In the beginning of 2016,

Olshelfske complained of neck pain that radiated down his upper extremities.  (Tr. 565, 568, 636, 494).  Still, his upper extremities had full 5/5 strength despite pain and tenderness in the cervical spine and shoulders.  (Tr. 636, 646).  Olshelfske underwent another cervical spine surgery in May 2016, which appears to have alleviated his neck and shoulder problems.  After the surgery he denied upper extremity radicular pain, paresthesia, or weakness (Tr. 676, 597) and his range of motion in the cervical spine was only minimally restricted (Tr. 676, 678).  His improvement appears to have continued because by February 2017, he had full range of motion in the upper extremities, (Tr. 606), and in March 2017, he reported that he was happy with his neck and again denied upper extremity radicular pain, paresthesia, or weakness.  (Tr. 597).

The ALJ also discussed the evidence on Olshelfske's lumbar spine and lower extremities.  In November 2013, he had 5/5 strength in the lower extremities and negative straight leg raising test.  Although he had some limitation in the lumbosacral spine, his physician noted that he ambulated without difficulty.  (Tr. 289).  On January 10, 2014, he had 5/5 strength throughout, negative straight leg raising test, a normal stance, and he was able to ambulate without difficulty.  (Tr. 285, 287).  Olshelfske underwent an MRI on January 13, 2014 which revealed no evidence of disc herniation, the neural foramina were patent, there was mild narrowing in the lumbar spine that was "stable and unchanged" since 2012.  In

addition, no new abnormalities were observed, and the sacral spine was normal. (Tr. 315). Though this MRI report might constitute "raw medical evidence," the mild findings are not so complex. Further, in February 2014 he had normal musculoskeletal range of motion. (Tr. 491). In May 2014, his family physician reported that another physician, Dr. Roosen, recommended non-surgical treatment for his low back pain. Indeed, Dr. Roosen recommended that the pain "should be managed considerably with therapy" and pain medications. (Tr. 346). If that treatment did not work, then injections would be tried. He apparently underwent an injection in May, but it did not help. So, his family physician prescribed Neurontin because the pain appeared to be nerve pain. (Tr. 351).

In 2015, objective findings included decreased range of motion in the neck (Tr. 463), decreased motor strength in the left lower extremity but no evidence of muscle weakness in both lower extremities (Tr. 463), tenderness in his lower back (Tr. 463, 361), and tender left shoulder with "severely limited" abduction (Tr. 554). He was treated conservatively with injections and pain medication, and he was given stretching exercises to do at home. (Tr. 464, 449, 554). From 2016 to 2017, while Olshelfske continued to report severe pain in his low back and problems with the strength in his left lower extremity, objective findings support the ALJ's RFC determination that he could engage in a limited range of sedentary work. He underwent an MRI of the lumbar spine which was described as showing

no large herniated disk and significant bilateral facet hypertrophy with resultant
stenosis at L4-L5 level.  (Tr. 646).   Still, his treatment continued to be
conservative with pain medication.  On physical examination, he repeatedly had
5/5 strength in his lower extremities except for his left ankle anterior tibialis, which
was around 2-3/5 (Tr. 636, 646, 676, 678) until March 2017 when he achieved 5/5
strength in that area with coaching (Tr. 597).  In February and on May 24, 2016, he
was observed to have an antalgic gait to the left side.  (Tr. 494, 636, 646, 678).  On
May 29, 2016 however, he was ambulatory with a steady gait and appeared
comfortable.  (Tr. 511).  Further, on January 27 and February 15, 2017, just before
the end of the relevant period under review, he had normal neck and
musculoskeletal range of motion, and there was no note of antalgic gait or reduced
weakness in the left lower extremity.  (Tr. 526, 606).

The objective evidence on his upper and lower extremities was not so
complex that a lay person could not readily understand the findings and use them
to craft  a set of appropriate physical restrictions.  Findings regarding strength,
range of motion, and the ability to ambulate are relatively straightforward and
don't require expert medical interpretation.  Further, Olshelfske's treatment for his
conditions was likewise straightforward—cervical spine surgery which appeared to
resolve his issues, pain medication, steroid injections, and instructions to perform
exercises or stretching at home. *Hauser v. Comm'r of Soc. Sec.*, 2014 WL 48554,

at *9 (S.D. Ohio Jan. 7, 2014), *report and recommendation adopted*, 2014 WL
221946 (S.D. Ohio Jan. 21, 2014) ("In terms of medical care, it is proper to
classify taking prescription medications and receiving injections as "conservative"
treatment."); *Carter v. Comm'r of Soc. Sec.*, 2014 WL 3400710, at *5 (E.D. Mich.
July 10, 2014) (finding that the plaintiff's "conservative treatment of his pain with
prescription medication and one spinal steroid injection" was inconsistent with his
allegations of disabling pain).  It was within the ALJ's purview to analyze the
objective medical evidence and to formulate an RFC based on that evidence.  Since
the objective findings consist of much more than "raw medical data," the ALJ did
not cross over into the impermissible zone of interpreting raw medical data for
herself and extrapolating functional limitations therefrom.[5]

Overall, it is clear that the ALJ did not merely interpret the medical evidence
herself.  The ALJ considered all the evidence in the record, including the objective
medical findings and, at least in part, the medical opinion evidence which provided
a foundation for her findings on Olshelfske's functional limitations.  Accordingly,
the undersigned finds no error in the ALJ's RFC assessment with regard to her
review of the medical evidence.

---

[5] To the extent the ALJ did not cite or discuss all of the medical evidence in the record, it
is of no moment because there is no requirement that the ALJ discuss every piece of evidence.
*See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can
consider all the evidence without directly addressing in his written decision every piece of
evidence submitted by a party.") (internal citation marks omitted).

c.     Logical Bridge and Substantial Evidence

Olshelfske also claims that the ALJ did not create a logical bridge between the medical evidence and the ALJ's determination that he could walk for two hours in an eight-hour workday, that he did not need to use a walker, and that he did not need to lie down and elevate his legs throughout the day.  The argument is unavailing.  First, no physician opined that he was unable to walk for two hours in a workday, that he needed to use a walker to ambulate, or that he needed to lie down and elevate his legs throughout the day.  In support of his assertion that he needs to elevate his legs, he cites Dr. Gupta's treatment note in which Dr. Gupta stated that Olshelfske had "bilateral feet erythema and edema which disappears with elevation of his feet."  (Tr. 606).  But Dr. Gupta did not opine as to whether he experienced erythema and edema every day, or whether he would need to elevate his feet every day, or for any period of time during the workday.  Notably, Dr. Gupta did not include a recommendation to keep his feet elevated in the "Plan."  Rather, Dr. Gupta advised Olshelfske to wear compression stockings every day and prescribed a medication.  (Tr. 607).  Second, as discussed above, the objective evidence does not establish that Olshelfske is disabled, or even that he cannot walk without a walker and he needs to keep his legs elevated throughout the day.  Instead, the record shows largely normal strength in the extremities, some

tenderness in the lumbar spine, and an antalgic gait on the left leg.  Olshelfske has
not shown how these findings translate into a finding of disability.

Olshelfske cites *McCraig v. Comm'r of Soc. Sec.*, 2017 WL 4211047 at *7
(E.D. Mich. 2017), to bolster his argument that the ALJ failed to create a logical
bridge between the evidence and the RFC.  But *McCraig* is distinguishable.  In that
case, the plaintiff pointed out how specific limitations in the RFC were inconsistent
with specific findings in the record evidence.  Here, Olshelfske has not pointed to
specific medical evidence that is inconsistent with these RFC findings.  He points
instead to his subjective statements, which were discounted.  Olshelfske's
argument appears to invite this Court to re-weigh the evidence, a task which this
Court is not permitted to undertake.  "This court's role in considering a social
security appeal . . . does not include reviewing the evidence *de novo*, making
credibility determinations, or reweighing the evidence."  *Dagnan v. Berryhill*, 2018
WL 4565917, at *7 (N.D. Ohio June 19, 2018), *report and recommendation
adopted*, 2018 WL 4327803 (N.D. Ohio Sept. 11, 2018) (citing *Brainard v. Sec'y
Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *see also Stief v.
Comm'r of Soc. Sec.*, 2017 WL 4973225, at *11 (E.D. Mich. May 23,
2017) ("Arguments which in actuality require 're-weigh[ing] record evidence'
beseech district courts to perform a forbidden ritual.").

It is Olshelfske's burden to establish the existence of a disability.  *See* 20 C.F.R. § 404.1512(c) ("You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled.  You must provide evidence, without redaction, showing how your impairment(s) affects your functioning during the time you say that you are disabled, and any other information that we need to decide your claim."); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) ("The determination of a claimant's Residual Functional Capacity is a determination based upon the severity of his medical and mental impairments.  This determination is usually made at stages one through four [of the sequential process for determining whether a claimant is disabled], *when the claimant is proving the extent of his impairments.*") (emphasis added).  Olshelfske has not met his burden of proving that he is functionally limited in walking and by the need to lie down and elevate his legs.  Further, the ALJ found Olshelfske's subjective statements were not fully supported by the medical evidence, and Olshelfske does not challenge that determination.  (Tr. 24).

Though there are some medical findings that support Olshelfske's position, there are a substantial number of medical findings that support the RFC, as discussed above.  This Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to

support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen* 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).  For the foregoing reasons, the undersigned concludes that the ALJ's RFC determination is supported by substantial evidence.

      2.    Listing 1.04

          a.    Parties' Arguments

Olshelfske's next and final argument is that the case should be remanded for review of whether he meets or medically equals Listing 1.04, disorders of the spine.  (Dkt. 12, at p. 19).  It is his belief that the ALJ made factual errors and ignored facts that call into question her decision at step three.  (*Id.* at p. 20-21).  Olshelfske acknowledges that under the current regulations the ALJ is not required to obtain the opinion of a medical expert on the issue of medical equivalency.  However, he contends that the step three finding must be based on an accurate reading of the record.  Further, he says the ALJ's inaccurate findings "underscore

the need for a medical expert opinion generally on the issue of RFC." (*Id.* at p. 22-23).

The Commissioner argues that Olshelfske failed to raise a substantial question as to whether he meets or medically equals Listing 1.04. (Dkt. 16, at p. 18-21). According to the Commissioner, the evidence plaintiff cites does not show that he could reasonably equal the listing. Further, as Olshelfske acknowledged, the ALJ was not required to obtain a medical opinion to support her finding that he did not medically equal the listing. (*Id.* at p. 22).

b.      Analysis

At step three of the disability evaluation process, the Commissioner must consider whether a claimant's impairments meet or medically equal any of the relevant listing requirements of 20 C.F.R. Part 404, Subpart P, App. 1; 20 C.F.R. § 404.1520(a). An impairment that meets only some of the medical criteria, but not all does not qualify, despite its severity. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). Conversely, a claimant who meets the requirements of a listed impairment will be deemed conclusively disabled, and entitled to benefits. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Berry v. Comm'r of Soc. Sec.*, 34 Fed. Appx. 202, 203 (6th Cir. 2002). The burden of proof for establishing that an impairment meets or equals the requirements of a listed impairment rests with the claimant. *See Foster v. Halter*, 279 F.3d 348, 354 (6th

Cir. 2001).  An impairment or combination of impairments is considered medically equivalent to a listed impairment ". . . if the symptoms, signs and laboratory findings as shown in medical evidence are at least equal in severity and duration to the listed impairments."  *See Land v. Sec'y of Health & Human Servs*., 814 F.2d 241, 245 (6th Cir. 1986) (per curiam).   In instances where the ALJ fails to address a listed impairment, if the plaintiff raises a substantial question that he meets or medically equals the listing, then the ALJ's decision may be set aside.  *Smith-Johnson v. Comm'r of Soc. Sec*., 579 Fed. Appx. 426, 433 (6th Cir. 2014) (Where the ALJ decision does not discuss a listing subsequently raised in objection, the court "must determine whether the record evidence raises a substantial question as to [the claimant's] ability to satisfy each requirement of the listing.").  But, under the circumstances presented here, that is, where the ALJ has addressed the contested listing and the plaintiff challenges the manner in which ALJ addressed it, the ALJ's decision will not be disturbed if it is supported by substantial evidence. *See Blakely v. Comm'r of Soc. Sec*., 581 F.3d 399, 405 (6th Cir. 2009) (The Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence.") (citation omitted).

On March 27, 2017, before the ALJ's decision in this case, the Social Security Administration changed the Social Security Ruling (SSR) about making

findings about medical equivalence at step three.  SSR 17-2p, 2017 WL 3928306

(Mar. 27, 2017).  Under SSR 17-2p, an ALJ need not obtain evidence from a

medical expert on equivalence if the ALJ believes the "evidence does not

reasonably support a finding that the individual's impairment(s) medically equals a

listed impairment." 2017 WL 3928306, at *4 (SSA Mar. 27, 2017).  The Ruling

also provides that the ALJ need not articulate his or her reasons for finding the

individual's impairments do not medically equal a listing at step three.  Rather, the

ALJ's "articulation of the reason(s) why the individual is or is not disabled at a

later step in the sequential evaluation process will provide rationale that is

sufficient for a subsequent reviewer or court to determine the basis for the finding

about medical equivalence at step 3."  *Id.* at *4.

      In the view of the undersigned, the ALJ's step three determination is

supported by substantial evidence.  On the date of the ALJ's decision, Listing 1.04

provided:

> 1.04 Disorders of the spine (e.g., herniated nucleus
> pulposus, spinal arachnoiditis, spinal stenosis,
> osteoarthritis, degenerative disc disease, facet arthritis,
> vertebral fracture), resulting in compromise of a nerve
> root (including the cauda equina) or the spinal cord.
> With:
> A. Evidence of nerve root compression characterized by
> neuro-anatomic distribution of pain, limitation of motion
> of the spine, motor loss (atrophy with associated muscle
> weakness or muscle weakness) accompanied by sensory
> or reflex loss and, if there is involvement of the lower

back, positive straight-leg raising test (sitting and
supine);
or
B. Spinal arachnoiditis, confirmed by an operative note
or pathology report of tissue biopsy, or by appropriate
medically acceptable imaging, manifested by severe
burning or painful dysesthesia, resulting in the need for
changes in position or posture more than once every 2
hours;
or
C. Lumbar spinal stenosis resulting in
pseudoclaudication, established by findings on
appropriate medically acceptable imaging, manifested by
chronic nonradicular pain and weakness, and resulting in
inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. § Pt. 404, Subpt. P, App. 1.

In reviewing the ALJ's decision for substantial evidence, the undersigned is
guided by two principles.  First, under SSR 17-2p, the Court is to look at the ALJ's
step three discussion as well as later portions of the decision to determine the basis
for the step three finding.   Second, on substantial evidence review, the "court may
look to any evidence in the record, regardless of whether it has been cited by the
[ALJ]."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).

The ALJ discussed much of the evidence discussed above.  For example, the
ALJ noted the evidence of reduced sensory loss and strength in the lower left
anterior tibialis and that Olshelfske could achieve 5/5 strength in that area with
coaching.  (Tr. 25).  And, aside from the anterior tibialis, he repeatedly had 5/5
strength in the lower extremities.  Further, though he was often observed to walk

with an antalgic gait, Dr. Prasad stated he did not need to use a walker and in May
2016 he ambulated with a steady gait.  (Tr. 361, 511).  In January and February
2017, he had normal musculoskeletal range of motion and no notation of impaired
gait or reduced strength in the lower extremities.  (Tr. 526, 606).  The ALJ
considered "the medical evidence of record, which documents clinical findings of
antalgic gait, weakness, reduced range of motion and positive straight leg raise."
(Tr. 26) (citing 9F/15; 10F/30; 11F/2, 23, 31; 17F/1; 19F/5, 14; 21F/8).  She also
discussed his cervical spine impairment and improvement after his 2013 and 2016
surgeries.  (Tr. 25).  As noted above, after his 2016 surgery he reported that he was
happy with his neck improvement and denied pain, weakness, and parasthesias in
his upper extremities.[6]  (Tr. 597, 676).  In addition to the objective findings, the
ALJ also considered Olshelfske's treatment with injections and pain medication,
which is considered to be conservative treatment.

Olshelfske puts forth some evidence in support of his position.  He cites his
symptoms of numbness and tingling in the right upper extremity in January 2015
(Tr. 463) and an MRI from 2016 which showed biforaminal stenosis from
uncovertebral hypertrophy at the C5-C6 level and facet hypertrophy with resultant

---

[6] After his 2013 surgery, he had had normal examinations of his cervical spine and upper
extremities until 2016.  He full strength in his upper extremities but complained of pain that
radiated down his arms.  He had his second surgery in May.  It appears then, that to the extent he
was limited by his upper extremity/cervical spine impairment, the impairment does not meet the
twelve-month durational requirement for disability since his symptoms were largely resolved
after his surgery.  (See Tr. 597, 606, 676, 678).

spinal stenosis at the L4-L5 level (Tr. 646).  (Dkt. 12, at p. 20-21).  He points to

evidence of 2-3/5 strength in left lower extremity and sensory loss.  He insists the

ALJ was incorrect in stating that the evidence did not support his requiring the use

of a walker long-term.  He says the evidence supports his ongoing use of a walker

because his left leg was dysfunctional.  (*Id.* at p. 22).

Olshelfske's citation to this evidence is essentially an invitation to the Court

to reweigh the evidence on medical equivalence.  This, the Court will not do.  *See*

*Brainard*, 889 F.2d, at 681.  The evidence is clear that Olshelfske has degenerative

disc disease and spinal stenosis.  Despite the diagnostic testing and repeated visits

with treating physicians and non-treating physicians, no physician opined that

Olshelfske has compromise of a nerve root or evidence of nerve root compression

that would satisfy the introductory paragraph of the listing.  Indeed, though there is

one positive nerve root tension test, there are three equivocal and one negative test

results.  (Tr. 636, 651, 678, 684).  The record also contains positive straight leg

raise testing and some sensory loss in the lower left extremity.  However, he was

able to achieve full 5/5 strength in the lower extremities, which does not suggest

that he had motor loss that would equal the severity of subsection (A) of the listing.

And, though there are records showing some limitation in the lumbar spine, there

are also records showing normal range of motion.  While the ALJ cannot ignore

evidence that detracts from a finding of disability, here, the undersigned cannot say

that the evidence supporting the ALJ's decision is undermined by the evidence plaintiff cites such that the determination is not supported by substantial evidence.

To the extent that Olshelfske argues error in the lack of a medical opinion on the issue of equivalence on Listing 1.04, this argument is also unavailing. As stated above, the ALJ was not required to obtain an expert opinion on equivalence if she believed the evidence did not reasonably demonstrate that Olshelfske met or equaled a listed impairment. Here, the ALJ clearly believed he did not reasonably demonstrate that he met or medically equal a listed impairment. Therefore, the ALJ was not required to obtain an expert medical opinion.

Finally, Olshelfske points out some errors in the ALJ's discussion. He notes that the ALJ stated there was no evidence of motor loss in the record, yet he was found to have 2-3/5 strength in the left lower extremity. The ALJ did indeed say, at step three, there was no evidence of motor loss in the record. (Tr. 22). However, later in the decision she discussed his 2-3/5 strength and that he obtained 5/5 with coaching. Thus, to the extent the ALJ erred in her statement at step three, the error is harmless because it is clear that the ALJ did in fact consider evidence of motor loss. Olshelfske is correct that the ALJ did not mention his February 2016 MRI. This is not error, as the ALJ is not required to cite or discuss every piece of evidence in the record. *See Kornecky*, 167 Fed. Appx. at 508. Olshelfske also contends that the ALJ relied on pre-onset date evidence to conclude that he

did not meet or equal the listing.  This is incorrect.  Though the ALJ discussed pre-onset date evidence at step three, she also extensively discussed post-onset date evidence both at step three and thereafter.  Again, SSR 17-2p directs the Court to read the decision as a whole to determine the basis of the step three determination.

For the forgoing reasons, the undersigned finds no basis on which to remand this case for further review of whether Olshelfske meets or medically equals Listing 1.04.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, and that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health*

*and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 16, 2019                    s/Stephanie Dawkins Davis
                                         Stephanie Dawkins Davis
                                         United States Magistrate Judge